## EXHIBIT C

## PRINCIPAL COMMERCIAL TERMS SHEET

Dated: ___ December 2009

To the members of the Steering Committee (as defined below)
of JSC BTA Bank

Dear Sirs,

## PRINCIPAL COMMERCIAL TERMS SHEET

1.  This letter records the key commercial terms of the restructuring (the **"Restructuring"**) of the financial indebtedness of JSC BTA Bank and its special purpose finance subsidiaries, TuranAlem Finance B.V. and BTA Finance Luxembourg SA (the **"Finance Subsidiaries"** and together with JSC BTA Bank being the **"Bank"** or **"BTA"**, the **"Group"**) as agreed by the Bank and a group of its financial creditors appointed by the Bank as member of its creditors' steering committee and signatory hereto (in this letter, the **"Steering Committee"**) pursuant to an appointment letter dated 3 September 2009 (the **"Appointment Letter"**).

2.  The Steering Committee presently comprises ABN AMRO Bank N.V. (supported by members of The Royal Bank of Scotland plc's Global Restructuring Group), Commerzbank Aktiengesellschaft, D. E. Shaw Oculus International, Inc., Euler Hermes Kreditversicherungs AG (acting for and on behalf of the Federal Republic of Germany), Fortis Investment Management UK Limited, Gramercy Advisors LLC, ING Asia Private Bank Limited, KfW (representing its affiliates DEG - Deutsche Investitions- und Entwicklungsgesellschaft mbH and KfW IPEX-Bank GmbH), Standard Chartered Bank, Export-Import Bank of the United States and Wachovia Bank N.A.

3.  The schedule to this letter includes the key commercial terms of a plan of restructuring agreed between the Bank and the Steering Committee following completion of the exercises referred to in paragraph 2 of Schedule A to the memorandum of understanding dated 21 September 2009 between the Bank and the Steering Committee (the "MOU"). This letter (including the schedule hereto) shall be published by the Bank on its website by close of business on 8 December 2009.

4.  The Steering Committee and the Bank will work together in good faith to agree:

    (a)  the detailed terms (which, once agreed, and taken together with the terms provided herein will constitute the **"Term Sheet"** for the purpose of paragraph 3 of the MOU) by 31 January 2010, or if later, 7 days after the Settlement of Proofs (as defined below), which shall be based on the key commercial terms set out in this letter and the MOU and with such further terms agreed between the Steering Committee and the Bank; and

    (b)  thereafter, the plan for the Restructuring (the **"Restructuring Plan"**) to be voted on at the statutory creditors' meeting of the Bank to be held in accordance with the law of the Republic of Kazakhstan No. 183-IV ZRK dated 11 July 2009 on Amendments and Additions to Certain Legislative Acts on Money Payments and Transfers, Accounting and Financial Reporting, Banking Activities, the National Bank of Kazakhstan and Other Legislation.

5.  The Bank shall not before termination of the Appointment Letter submit a plan of restructuring (or any other documents relating to a restructuring or reorganisation of the Bank to be put to a vote of its creditors) to the Specialised Financial Court other than on the basis of the Term Sheet agreed in accordance with the MOU and this letter. The Bank shall before submitting any application to the Specialised Financial Court in connection with a

restructuring process under the supervision of that Court where practicable notify the Steering Committee of such application prior to its being made and in any event as soon thereafter as reasonably practicable and agrees that any such application to such Court should not prevent payments to be made by the Bank to the Steering Committee and its advisors pursuant to the Appointment Letter.

6.    No provision of this letter or the schedule hereto shall:

    (a)    have legal effect or constitute any binding obligation on any of the parties to it other than paragraphs 4 to 9 of this letter; nor

    (b)    be binding on the (i) financial creditors or (ii) export credit agencies or other credit protection providers providing insurance, guarantees or other types of support in relation to financial indebtedness of the Bank and its Finance Subsidiaries or (iii) JSC National Welfare Fund "Samruk-Kazyna" ("**SK**") (collectively, the "**Financial Creditors**").

7.    The Bank acknowledges that the members of the Steering Committee:

    (a)    shall not be bound to accept or reject or recommend this or any subsequent proposal set out as part of the Restructuring; and

    (b)    are not authorised to act on behalf of any Financial Creditor and are not acting in their capacity as agents under syndicated facilities with the Bank or otherwise and are not acting as fiduciary for or advisor to any person in connection with this letter or the arrangements contemplated under this letter (save as pursuant to obligations arising under any investment management agreement). The members of the Steering Committee give no covenants and have no duties or obligations to any person in connection with this letter or the Restructuring (save as pursuant to obligations arising under any investment management agreement).

8.    This letter is expressly:

    (a)    without prejudice to and shall not be construed as a waiver or variation of any of the rights and remedies of Financial Creditors under their respective contractual documentation with the Bank (the "**Financing Agreements**") and/or under applicable law, all of which rights and remedies are hereby specifically reserved;

    (b)    without prejudice to the Bank's continuing obligations under the Financing Agreements, which shall remain in full force and effect; and

    (c)    subject to all necessary approvals of the Bank and of each member of the Steering Committee.

9.    This letter and any non-contractual obligations arising out of or in connection with this letter shall be governed by and construed in accordance with the laws of England. This letter may be translated into Russian. However, in the event of any discrepancy, the English version of this letter shall prevail. This letter may be executed in any number of counterparts and this shall have the same effect as if the signatures on the counterparts were on a single copy of this letter.

10.    Please confirm your agreement and acceptance of the provisions of this letter by signing below.

Yours faithfully

**JSC BTA Bank**

Anvar G. Saidenov
Chairman of the Management Board

[seal]

**ACCEPTANCE**

We agree to and accept the provisions of this letter as of the date first above written.

for and on behalf of
**ABN AMRO Bank N.V.**

**ACCEPTANCE**

We agree to and accept the provisions of this letter as of the date first above written.

_____
Eric Zimny

for and on behalf of
**Commerzbank Aktiengesellschaft**

Tatiana Novikova

**ACCEPTANCE**

We agree to and accept the provisions of this letter as of the date first above written.

for and on behalf of
**D. E. Shaw Oculus International, Inc.**

## ACCEPTANCE

We agree to and accept the provisions of this letter as of the date first above written.

for and on behalf of
**Euler Hermes Kreditversicherungs AG**
**(acting for and on behalf of the Federal Republic of Germany)**

**ACCEPTANCE**

We agree to and accept the provisions of this letter as of the date first above written.

for and on behalf of
**Fortis Investment Management UK Limited**
in its capacity as Investment Manager

Ingrid Furtado
DIRECTOR &
COMPANY SECRETARY

**ACCEPTANCE**

We agree to and accept the provisions of this letter as of the date first above written.

for and on behalf of
**Gramercy Advisors LLC**

**ACCEPTANCE**

We agree to and accept the provisions of this letter as of the date first above written.

_____

for and on behalf of
**ING Asia Private Bank Limited**

## ACCEPTANCE

We agree to and accept the provisions of this letter as of the date first above written.

Thorsten Billing
Vice President

for and on behalf of
**KfW (representing its affiliates DEG - Deutsche Investitions- und Entwicklungsgesellschaft mbH and KfW IPEX-Bank GmbH)**

**ACCEPTANCE**

We agree to and accept the provisions of this letter as of the date first above written.

_____
for and on behalf of

**Standard Chartered Bank**

**ACCEPTANCE**

We agree to and accept the provisions of this letter as of the date first above written.

for and on behalf of
**Export-Import Bank of the United States**
FRANCES NWACHUKU
VICE PRESIDENT, ASSET MANAGEMENT

**ACCEPTANCE**

We agree to and accept the provisions of this letter as of the date first above written.

for and on behalf of
**Wachovia Bank N.A.**

**SCHEDULE**

**Restructuring Plan Principal Commercial Terms**

- Restructuring effort required from senior and subordinated creditors including SK to generate US$11.13 billion of regulatory capital.

- Senior Financial Creditor Debt (excluding SK) totalling US$10.26 billion principal (plus US$529 million of accrued interest through to 31 March 2010). All default interest accrued through to 31 March 2010 to be written off.

  o **Senior Package 1**

    - **Debt included:** Senior debt instruments including most bonds, bank loans and certain Non-ECA Trade Finance Debt (US$7.677 billion of principal plus accrued interest through to 31 March 2010)

    - **Restructuring package:** Cash + Senior Debt + Subordinated Debt + Equity + Recovery Notes

    - Cash paid of US$946 million plus any cash not utilised under Senior Package 4 (12.32% of principal restructured)

    - New senior debt instrument (face value of US$2.305 billion (30.0% of principal rescheduled)):

      - Eight-year tenor with a four-year grace period

      - Discount of 70.0% of principal

      - 10.5% per annum cash interest rate, payable semi-annually

    - New subordinated debt instrument (face value of US$506 million (6.6% of principal restructured)):

      - Fifteen-year tenor with a ten-year grace period

      - 7.2% per annum cash interest rate, payable semi-annually

    - Share of Equity (8.66% of total equity) and Recovery Notes (82.43%)

    - Estimated participation of 74.8%

  o **Senior Package 2**

    - **Debt included:** ECAs/other official government sector creditors/Non-ECA Eligible Trade Finance Creditors (US$1.636 billion of principal plus accrued interest through to 31 March 2010)

    - **Restructuring package:** OID Debt + Subordinated Debt + Equity + Recovery Notes

    - Original Issue Discount (**"OID"**) debt instrument (Day-1 value of US$763 million (46.6% of principal restructured) and fully accreted value of US$1.636 billion)

1

- Eleven-year tenor with a seven-year grace period and straight line accretion over eleven years

- 3.75% per annum cash interest rate during grace period and 3.2% thereafter, payable semi-annually

- Limited to:

  o US$1.4 billion for ECA/other official government sector creditors; and

  o US$236 million for Non-ECA Eligible Trade Finance Creditors,

  (together, **"SP2 Eligible Debt"**)

  - New subordinated debt instrument (face value of US$105 million (6.4% of principal restructured)) - terms as for new subordinated debt instrument under Senior Package 1

  - Share of Equity (1.84% of total equity) and Recovery Notes (17.57%)

  - Estimated participation of 15.9%

  - Creditors holding SP2 Eligible Debt may, subject to conditions to be agreed (including a cap) elect to have their SP2 Eligible Debt restructured under Senior Package 1

o **Senior Package 3**

  - **Debt included:** Non-ECA Eligible Trade Finance Debt (US$700 million of principal plus accrued interest through to 31 March 2010)

  - **Restructuring package:** Revolving Committed Trade Finance Facility

  - **"Non-ECA Eligible Trade Finance":** This is comprised of all Non-ECA Trade Finance (US$2.120 billion) excluding[1]:

    o facilities categorised as constituting:

      - "loan repayment guarantees" (US$820 million); or

      - "finance extended for general corporate purposes" (US$140 million); and

    o trade finance facilities representing contingent obligations of the Bank with maturities falling after 30 June 2010 (US$225 million) (**"Unmatured Trade Finance"**).

---

[1] The difference between US$936 million and the SP3 "Debt included" amount of US$700 million (being US$236 million) shall be included under SF2 Eligible Debt or, subject to the conditions specified, Senior Package 1.

- US$700 million of the Non-ECA Eligible Trade Finance to be settled by a
  new Revolving Committed Trade Finance Facility ("**RCTFF**") (this portion
  receives no Equity, subordinated debt or Recovery Notes) (committed for 2
  years) available to the Bank subject to eligibility criteria to be agreed

- Estimated participation of 6.8%

o **Senior Package 4**

- **Debt included:** Islamic Finance Creditors (US$250 million of principal plus
  accrued interest through to 31 March 2010)

- **Restructuring package:** Cash

- Cash paid of $54 million (21.5% of principal restructured)

- Restricted to Financial Creditors holding Shariah-compliant debt of the Bank

- Junior Financial Creditor Debt totalling US$1.35 billion principal

o **Junior Package 1**[2]

- **Debt included:** Subordinated debt owed to Kazakhstani pension funds (KZT
  28 billion or US$186 million equivalent (denominated in Tenge)) of principal
  plus accrued interest through to 31 March 2010)

- **Restructuring package:** Subordinated debt

- New subordinated debt instrument (face value of KZT 28 billion or US$186
  million equivalent (denominated in Tenge)) with a twenty-year tenor with
  fifteen-year grace period

- 8.0% per annum cash interest rate, payable semi-annually

- Restricted to Kazakhstani pension funds

o **Junior Package 2**

- **Debt included:** All subordinated debt and perpetual bonds (other than
  subordinated debt owed to Kazakhstani pension funds) (US$1.161 billion of
  principal plus accrued interest through to 31 March 2010)

- **Restructuring package:** Equity

- Share of Equity (4.50% of total equity)

- Restricted to Subordinated Debtholders and Perpetual Bondholders

(All figures and categorisations relating to amounts of debt (including Non-ECA Trade Finance)
are based on base information supplied by the Bank and have not been capable of verification by
the Steering Committee.)

- SK

---

[2] Junior Facility 1 terms are predicated on the basis that Kazakhstani pension funds may not legally restructure
their existing debt to hold securities with less advantageous terms.

- o Debt of KZT 644 billion (US$4.270 billion) face value (other than deposits) plus accrued interest (KZT 26 billion or US$175.6 million) through to 31 March 2010 converted at par to equity (common shares).

- o Share of Equity (85.00% of total equity).

- **"Restructuring Creditors"** means those Financial Creditors whose debt is being restructured via the facilities referred to above (excluding SK and Related Parties).

- Equity

  - o Sharing of equity

    - SK – 85.00%

    - Senior Financial Creditors under Senior Packages 1 and 2 – 10.50%

    - Subordinated Financial Creditors under Junior Package 2 – 4.50%

    - Others - 0%.

  - o The parties shall examine the possibility of establishing a special purpose corporation or corporations (each holding less than 10% of the equity of the Bank) to hold, at the relevant creditor's option. creditors' equity (each, a **"Creditor Shareholder SPV"**) which would issue participation notes to creditors. Each Creditor Shareholder SPV would cast its votes on any resolution of the shareholders of the Bank in proportion to the value of the votes cast by the holders of the participation notes on the same resolution (save for certain matters requiring special consent (as specified in the Shareholders' Agreement and/or Charter) where each Creditor Shareholder SPV would cast its votes as a block vote). Each Creditor Shareholder SPV shall remain in place until the date (the **"GDR Exchange Date"**) which is the later of (i) 3 years after the effective date of the Restructuring and (ii) the date on which a global depository receipt ("GDR") programme is established in respect of the Bank's shares and such GDRs are listed on a recognised international exchange. At such time the participation notes would be exchanged into GDRs (or, if requested by the relevant holders of participation notes, by reference to their entitlement, common shares in the Bank).

- Board of Directors

  - o Post-Restructuring, the board will be made up of nine directors composed as follows (for the first three years following the Restructuring Date):

    - Three independent directors nominated by the Corporate Management and Appointments Committee;

    - Restructuring Creditors beneficially holding equity post-Restructuring and other Restructuring Creditors to have the right to appoint up to two directors in aggregate (the **"Creditor Directors"**); and

    - Four directors appointed by SK.

  - o Directors will be re-elected annually.

- Dividends

4

- o No dividend, fees or other distribution (each a **"Distribution"**) to shareholders shall be declared, paid or made by the Bank to shareholders:

  - prior to or on the effective date of the Restructuring; or

  - after the effective date of the Restructuring unless all the post-Restructuring senior restructured debt has been repaid in full.

- Recovery Notes

  - o Recoveries to include:

    - cash and accounting recoveries on any asset written off, any provisioned asset or pool of provisioned assets:

      - over and above net book value; or

      - written off,

      as at 30 June 2009;

    - litigation recoveries; and

    - deferred tax recoveries.

  - o Recovery Notes to have ten-year tenors and at the end of their tenors to be valued for the purposes of redemption.

  - o 50% of recoveries for Restructuring Creditors under Senior Packages 1 and 2 and 50% to remain with the Bank.

  - o Recovery Notes to be structured to be off balance sheet until recovery is made at which point a liability is created.

  - o Amounts payable under Recovery Notes by reference to:

    - recoveries realised in either 2010 and 2011 to the extent they exceed the projected recoveries in such years in the BTA Model; and

    - recoveries realised on or after 1 January 2012.

  - o Any payment due to Recovery Note holders arising solely as a result of an accounting recovery will be deferred until the Bank receives the cash benefit thereof.

  - o Disposals by the Bank of assets with an original book or current market value in excess of US$5 million may only be made in compliance with a transparent procedure to be agreed.

- Creditor Shareholder protections

  - o Restructuring Creditors shall have certain minority protections which will be dealt with by way of a shareholders' agreement (the **"Shareholders' Agreement"**) between SK and the Creditor Shareholder SPVs and appropriate amendments to the charter documents of the Bank (the **"Charter"**) providing for matters which:

    - require shareholder majority/supermajority approval; and/or

    - require approval of the Creditor Directors,

5

it being understood that, in relation to any management contracts and other remuneration/service agreements entered into by the Bank, the following shall apply:

- entering into a management contract by BTA shall require approval of a qualified majority of the Bank's Board of Directors (being a majority including the Creditor Directors and one independent director) (a **"Qualified Majority Approval"**), the approval of the Creditor Directors in this case not to be unreasonably withheld;

- appointing or removing the Bank's Chairman, CEO or CFO shall require a Qualified Majority Approval; and

- approving the remuneration of the Bank's Chairman, CEO and CFO shall require Qualified Majority Approval

o   The Shareholders' Agreement shall expire on the GDR Exchange Date

o   Listing of equity on KASE to be maintained.

o   Listing of equity on international exchange if Creditors request.

o   SK (acting alone or in concert) drag right over all remaining shares where it wishes to transfer a majority of the shares in the Bank to one or more persons on condition that (a) the Restructuring Creditors shall receive the same price per share as SK and (b) the sale is on arm's length terms and for fair market price (or better) (to be certified by an independent expert).

o   Each Creditor Shareholder SPV to have until the GDR Exchange Date:

- a pro-rata tag along right where SK (acting alone or in concert) wishes to transfer less than 30% of the shares in the Bank to one or more persons; and

- a tag along right to dispose of all of its shares where SK (whether acting alone or in concert) wishes to dispose of 30% or more of the shares in the Bank.

- The tag price shall be the average price paid per share to SK.

- Change of Control

o   Upon:

- a Change of Control; and/or

- any disposals (excluding ordinary course of trading) in any financial year of more than 6.5% of the Bank's total gross assets (determined by reference to the Bank's most recent financial statements),

each Restructuring Creditor:

- under Senior Package 1 will have an option to put its senior and subordinated debt at par (plus accrued interest); and

- under Senior Package 2 will have an option to put its OID instrument at its accreted value (plus accrued interest) and subordinated bonds at par value (plus accrued interest).

- **"Change of Control"** means:

6

- SK ceases to control the Bank (other than where it ceases to control the Bank (a) by transfer of control to a Permitted Transferee or (b) in connection with a Secondary Public Offering) where "control" of the Bank means:

  o the holding beneficially of more than 50% of the issued share capital of the Bank (excluding any part of that issued share capital that carries no right to participate beyond a specified amount in a distribution of either profits or capital) or

  o the power (whether by ownership of shares, proxy, contract, agency or otherwise) to cast, or control the casting or, of more than 50% of the maximum number of votes that might be cast at a general meeting of the Bank;  or

- Any person or group of persons acting in concert (other than where (a) such person or persons are Permitted Transferees or (b) in connection with a Secondary Public Offering) gains control of the Bank where "control" means the power (whether by ownership of shares, proxy, contract, agency or otherwise) to:

  o appoint or remove all, or the majority, of the directors or other equivalent officers of the Bank; or

  o give directions with respect to the operating and/or financial policies of the Bank with which the directors or other equivalent officers of the Bank are obliged to comply.

- **"acting in concert"** means, a group of persons who, pursuant to an agreement or understanding (whether formal or informal), actively co-operate, through the acquisition directly or indirectly of shares in the Bank or any of their respective assets by any of them, either directly or indirectly, to obtain or consolidate control of the Bank.

- **"Permitted Transferee"** means a person which;

  o is:

    ▪ a bank or other financial institution subject to financial regulation in Russia, China, Hong Kong, Singapore or an OECD country; or

    ▪ a sovereign wealth fund from countries to be agreed;

  o has a minimum credit rating from S&P of at least BBB or equivalent from Moody's or Fitch;

  o has a minimum paid up share capital and reserves of at least US$7 billion; and

  o is not affiliated with any of the present or former shareholders or managers of the Bank

- **"Secondary Public Offering"** means any sale or public offering of any equity security (including any preference share) in the Bank by

way of flotation, public placing, listing or other public offering on any recognised international exchange

- Call rights

  o The debt/bonds issued under Senior Package 1 is callable at any time at the option of the Bank on 60 days' notice at par plus accrued interest plus, if positive, the Make-Whole Amount if any.

    "**Make-Whole Amount**" means the present value of the excess (if any) of (a) all remaining scheduled principal and interest payments on the instrument being called discounted by reference to the yield to maturity implied by the yields reported for actively traded US Treasury securities having maturities most nearly equivalent to the maturity of the instrument being called plus 250 basis points, over (b) the principal amount of the instruments being called.

  o The debt/bonds issued under Senior Package 2 are no call.

  o The debt/bonds issued under Junior Package 1 is callable at par plus accrued interest, but only if all senior and subordinated debt under Senior Packages 1 and 2 have been or are contemporaneously called and redeemed.

- Process and Documentation

  o Independent Supervisors (insolvency practitioners) to be appointed to handle proofs of claim process for voting and distribution and to distribute restructuring consideration.

  o Independent Adjudicator (arbitrator) to be appointed to settle disputed proofs of claim.

  o Appointment of Supervisors and Adjudicator to be made immediately and proofs of claim to be settled ("**Settlement of Proofs**") before 22 January 2010.

  o The parties shall examine the possibility, in the context of Senior Package 1, of structuring alternative bonds-for-bondholders and bonds-for-bank creditors. The bonds-for-bondholders would be issued directly to Restructuring Creditors. The bonds-for-bank creditors would be issued to a special purpose company and the special purpose company and Restructuring Creditors would enter into a back-to-back loan agreement on substantially the same terms as the bonds-for-bank creditors.

  o The parties shall examine the possibility, in the context of Senior Package 2 of the Restructuring Creditors having the option to receive OID-instruments on a bilateral or multi-party basis to be issued directly by the Bank to Senior Package 2 Restructuring Creditors or through a special purpose company.

  o All bonds to be listed, tradable and euroclearable.

- Regulatory

  o National Bank of Kazakhstan to treat the Bank no less favourably than other second-tier banks in Kazakhstan.

  o It is assumed that subordinated debt of the Bank created under Senior Packages 1 and 2 and Junior Package 1 contribute towards tier 2 capital of the Bank.

- No Material Adverse Change

- o  Restructuring conditional on no adverse change in the business, financial condition, indebtedness or prospects of the Bank compared to that envisaged by the financial model (the "**BTA Model**") titled "BTA Bank - BP@ 05 12 2009 - revised BTA proposal - sent Deloitte" sent at 1.09 pm on 5 December 2009 or in the international or any relevant domestic financial market (including, without limitation, devaluation of the Kazakhstan Tenge), in each case as determined by the Steering Committee.

- Full guarantee to Restructuring Creditors in cases where the Bank is not the direct issuer of debt instruments.

- Debt denominated in any currency other than Tenge shall upon Restructuring be converted into new debt instruments denominated in US dollars and debt denominated in Tenge shall upon Restructuring shall be converted into new debt instruments denominated in Tenge.

- Representations and warranties, undertakings and events of default, satisfactory to the Steering Committee and the Bank, to be included in new debt instruments.