**EXHIBIT 3**

Chamber of Commerce and Industry of Geneva
Swiss Rules of International Arbitration                                28th June 2010

## ANSWER TO STATEMENT OF DEFENCE

submitted before the Chamber of Commerce and Industry of Geneva

by

**BANQUE INTERNATIONALE DE COMMERCE – BRED,**
21, rue du Rhône 1204 Genève, represented by Maître Sirin Yüce, Mentha & Associés, 4, rue de l'Athénée, 1211 Genève 12

*Claimant*

vs.

**BTA BANK JSC,**
97, Zholdasbekov street Samal -2, 050051 Almaty, Kazakhstan, represented by White & Case LLP, 5 Old Broad Street, London EC2N 1DW

*Respondent*

BTA BANK JSC (hereafter: BTA)'s <u>Statement of Defence of 21st June 2010 is, in opposition to the request of the arbitral tribunal, not limited to the facts, which occurred after the 17th May 2010</u>. Indeed the Respondent does refer to the provisions of the Information Memorandum dated 1st May 2010. It also treats of a non-applicable Recognition Order of the United States Bankruptcy Court of 2nd March 2010. The Respondent explains simply the reasons of its bad financial situation and how it is trying to adopt a restructuring plan and at what stage of this process it is, whereas it was already given the opportunity to do so before the deadline set on 17th May 2010. Thus, the Respondent does not once come to the core problem being the breach of its contractual obligations. The only objective of the Respondent is to delay the arbitration proceedings as much as possible and set the arbitral calendar in conformity with the restructuring plan: it has had three time periods to submit a Statement of Defence, also it gained some time by offering to pay part of its arbitral fees before retracting itself etc.

## I.    General financial debt issues of BTA

1.   The Respondent extensively refers to the reasons which triggered the suspension of all payments by BTA, mainly relating to the performance of an important financial loan granted by Morgan Stanley Bank International Limited as well as fraudulent and unlawful transactions entered into by the Respondent's former management.

2.   Taking such a blunt decision as the suspension of all payments, BTA acted in violation of the international standard practices, whereby commercial debt keeps being served not withstanding any issue relating to the financial debt. Hence, BTA unilaterally imposed on its commercial creditors a rescheduling that should have targeted financial lenders only.

3.   This is to state that BTA has put especially its trade finance creditors, including small establishments as BIC-BRED, in a very difficult posture. The Respondent's reference to "good faith" provisions under Swiss law is thus out-of-place.

## II.    Unbinding restructuring plan

4.   As opposed to what the Respondent pretends, the restructuring plan is not yet a binding obligation: neither the submission of the Claimant of a claim form on 19th May 2010 nor the acceptance by the two thirds of the creditors of the restructuring plan on 28th May 2010 did render the restructuring plan effective.

5.   In fact, further conditions precedent and other requirements, listed in the Information Memorandum of 1st May 2010 (Respondent's Exhibit 1), have still to be fulfilled by BTA in order for the restructuring plan to become applicable to all creditors, including the Claimant.

- 2 -

6. Pursuant to Annex 3 of Schedule 1 of the Information Memorandum (Respondent's Exhibit 1), the Claimant authorizes the Respondent *"to enter into and execute and deliver this Deed on its behalf"*. The Deed to be signed by the Respondent on the Claimant's behalf will contain the following provision: *"The Claimants and the Related Parties hereby irrevocably and unconditionally release and/or waive on their own behalf and on behalf of any person to whom they may have transferred any of their Claims, in each case to the extent permitted by law, each and every claim which they have or may have against the Bank…"*. This Deed *"releasing its claim [may only be signed by the Respondent] once all applicable conditions precedent were fulfilled"* (i.e. § 87 of the Statement of Defence).

7. Before voting, to make sure that submitting the claim form did not have as consequence an immediate waiver of its rights, the Claimant has questioned the Respondent, by e-mail of 14th May 2010 from Mr Ilario Cirieco to Ms Verena Galyamova, on the date on which the Deed of Release will come into force (Claimant's Exhibit 20). In fact, it was important for the Claimant to be able to pursue the arbitral proceedings until the Restructuring Plan be implemented.

8. The Respondent has answered by e-mail of 17th May 2010, referring to the § 3.4. of the Information Memorandum as well as its article "Key terms and definitions", that the *"Deed of Release [is] to be entered into by the BTA Bank following the Restructuring Date (i.e. on the Restructuring Date) on behalf of Creditors"* (Claimant's Exhibit 20).

9. This Deed of Release has not been signed yet as all of the conditions precedent have not been fulfilled. Only such signature would mark the date when the Claimant would have to give up all claims regarding the pending debt (i.e. § 86-87 of the Statement of Defence)

10. Also, the Respondent indicates at § 37 of its Statement of Defence that the accomplishment of this proceeding was <u>initially planned</u> to take place *"by the end of June and that the Financial Court hearing to grant final approval of the Restructuring Plan would take place on 2 July, with the Restructuring Date to follow on 14 July"*.

11. It admits then at its § 38 that the adoption of the restructuring plan is not going as planned by stating that *"<u>it now appears that these dates are likely to slip because the recent deterioration of the Respondent's loan portfolio has acquired an increase in provisions which in turn has eroded the Respondent's regulatory capital base. That means that the Respondent will, during the course of the next two months, be taking a series of actions designated to release provisions so that it can complete the Restructuring by the long-stop date of 5 September 2010 set by the Decision</u>"*. BTA refers to certain difficulties in implementing the plan generating major delays. This is evidence that the plan remains subject to the evolution of the financial situation of BTA.

12. This recent information is in opposition of the article "Representations and Undertakings" contained in the claim form (Respondent's Exhibit R-2), which

states the following: *"the Claimant has adequate information concerning its Claim and the business and financial condition of the Bank"*. The respondent itself encounters unexpected problems in the completion of the restructuring plan.

13. The Respondent talks about *"current timetable"* in § 39 of its Defence showing the timetable is subject to modifications. It once again admits there are more steps to be taken before the Financial Court might even speak out for or against the plan at its § 40 by the following: *"Once the Restructuring has been completed, the Financial Court will be invited to make an order that the Restructuring Plan has been carried out and that the Restructuring is, therefore, terminated"*. At § 63, the Respondent utters again *"The Claimant is bound to accept the provisions of the Restructuring Plan <u>once the Restructuring Plan becomes effective</u>"* admitting the plan is not yet effective. Although a contractual agreement was reached (except concerning the claimed interests which will be studied under part IV of the present brief), this agreement is conditional and until the preliminary conditions are realized, the agreement remains unbinding (i.e. § 62 of Statement of Defence).

14. The Claimant, as well as the other creditors of BTA, has no control over the success or the failure of the restructuring process. The Respondent has not been able to guarantee the accomplishment of the restructuring or its date of entering in force. <u>This date has already been postponed following unexpected problems encountered by the Respondent. This simply proves that the restructuring remains an uncertain future event for the moment</u>. The Respondent has the possibility to change the date of events completely unilaterally, meaning that even if the plan will finally be successful, this can take considerable time (i.e. § 64 of the Statement of Defence).

15. Furthermore, there is no need for a Kazakh law expert to indicate us the chances of this plan to become one day binding. <u>The only relevant point is that the restructuring plan is not in force today</u> and will not be at least until autumn.

16. The Claimant has respected its obligations towards the Respondent. In order to protect its interests, it has to pursue the arbitral proceedings which have been started long before the restructuring process began. The Claimant has no guarantee as to the fact that the restructuring will occur. For this reason, it cannot take the risk of staying or stopping the arbitral proceedings. In doing so, the Claimant would only put itself in the initial position where it would have to start individual proceedings all over again or lose more time to move forward in the proceedings if the restructuring does never occur.

17. The Claimant does not understand how any prejudice to other creditors or to the restructuring plan could exist.

### III.   Amendments to the Restructuring Plan

18. <u>On 19th May 2010</u>, date when the Claimant submitted its claim form (Respondent's Exhibit 2), <u>nothing indicated in the Information Memorandum that the parallel, court or arbitral, proceedings should not be continued while the adoption of the restructuring plan is in process</u>.

19. The letter from the Chairman of the Management Board of the Respondent stated at page 9 of the Information Memorandum that the *"Bank reserves the right to change the date on which the Claimants' Meeting is held or on which other events are to occur so long as it provides adequate notice to Claimants…"* (Respondent's Exhibit 1 - § 64 Statement of Defence). This right to modify concerns exclusively the <u>dates</u> on which events are to occur.

20. Following page 107 of the Information Memorandum, *"Once a Form of Proxy is submitted, it may only be withdrawn […] If any changes are made to the Restructuring Plan as set out in this Information Memorandum which are materially adverse to Claimants, the Bank shall in a supplement to this Information Memorandum in which such changes are published, inform Claimants that they are entitled to revoke their Forms of Proxy […]"* (Respondent's Exhibit 1- § 65 Statement of Defence). <u>According to the Information Memorandum, the Respondent has therefore not the right to unilaterally impose material modifications without giving the creditors the opportunity to revoke their claims in the restructuring plan</u>.

21. Clause 7.2 of the Information Memorandum contains the main provision concerning modifications to the proposed restructuring plan: *"(b) The Bank without the consent of the Claimants […] but following consultation with the Steering Committee, make a modification to the Restructuring Plan or any procedures to complete the Restructuring, in each case which are of a <u>minor or technical nature or to correct a manifest error and/or to postpone particular events or deadlines</u> […] so long as the postponement is not materially prejudicial to the interests of the Claimants"* (Respondent's Exhibit 1- § 67 Statement of Defence). Minor, technical issues, manifest errors or event dates are the only points, which can be modified unilaterally by the Respondent. No other amendments to the Restructuring are permitted without giving the creditors the opportunity to revoke their claims in the plan.

22. Nonetheless, BTA is trying to modify an important provision the Information Memorandum.

23. The Respondent is trying to insert a new clause 3.6 which would state that: *"Claimants […] irrevocably agree that, without prejudice to their right to receive Entitlements, as of the Restructuring Date no Proceeding or other judicial or quasi-judicial, administrative or regulatory process whatsoever against the Bank or its property shall be commenced or continued in any jurisdiction whatsoever to recover any Claim or to establish the amount or existence of any Claim and any Claimant […] which has commenced any such Proceeding shall forthwith cease*

- 5 -

*such Proceeding*" (Respondent's Exhibit 1- § 69-71 Statement of Defence).

24. This clause has been added on 27th May 2010, after the Claimant has handed in its claim form. Its clear objective is to block BIC-BRED's arbitral claim.

25. It is opposed to the rule contained in the Information Memorandum, Annex 3 of Schedule 1 concerning the Deed of Release, which provides that all claims and proceedings are cancelled when the plan becomes effective and not before (Respondent's Exhibit 1).

26. Yet, the Respondent does intentionally not tell in its Statement that this modification has not yet been accepted by the Steering Committee. Foot note number 12 specifies that "*This item is being discussed by BTA and the Steering Committee*", the reason being that this modification is not simply a technical or minor one. Indeed, the Claimant would never have agreed to participate to the restructuring plan, and thus would not have submitted its claim form, if this paragraph did exist on 19th May 2010. The Respondent must then whether give the Claimant the possibility to revoke the proxy and the claim form or renounce to the modification. In anyway, this amendment, still being discussed whether to its admission, remains inapplicable.

### IV. Interests claimed in the restructuring process

27. The Claimant has asked for 5% interest over the amount of USD 20'277'533.33 in the claim form it submitted on 19th May 2010 (Respondent's Exhibit 2).

28. In fact, the adjudicator has decided that USD 20'277'533.33 be restructured as being trade finance credit in its entirety. Although, as the loan agreement between the parties does not provide an interest rate after the 4th August 2009, there is a lack of agreement between the parties as to the interest rate after this date. The Claimant requires that 5%, in conformity with Swiss law, be paid by the Respondent in the restructuring process.

29. The adjudicator has asked BIC-BRED to provide it with an independent legal opinion concerning the interest rate BIC-BRED is entitled to. This has been done in the short deadline given to the Claimant. The legal opinion of Me Aude Cornuz of Pirker + Partners clearly provides that the Claimant is entitled to 5% interest over USD 20'277'533.33.

30. The Respondent has indicated by e-mail of 21st May 2010 having registered the BIC-BRED's claim with the 5% interest from 4th August 2009 (Claimant's Exhibit 21).

## V.  Non-applicability of the U.S. and U.K. Recognition orders

33. In default of good arguments, the Respondent refers to an Order of the United States Bankruptcy Court, Southern District of New York dated 2 March 2010 in relation to JSC BTA Bank ("Recognition Order").

34. First, this Order did exist before the 17th May 2010, showing that the Respondent does not follow the arbitral tribunal's order concerning its Statement of Defence.

35. Then, according to this Order, "*The debtor and the Foreign Representative are granted all of the relief set forth in section 1520 of the U.S. Bankruptcy Code including, without limitation, the application of the protection afforded by the automatic stay under section 362 (a) of the U.S. Bankruptcy Code to the Bank worldwide and to the Bank's property that is within the territorial jurisdiction of the United States.*"

36. As opposed to the Respondent's interpretation, this order does not apply to the Claimant. The order means by "the Bank worldwide" BTA and its subsidiaries or daughter companies all over the world and not that the order applies worldwide!

37. The Recognition Order provides protection to the Respondent "*within the territorial jurisdiction of the United States*". Thus, as it does not apply elsewhere then in the U.S. territory, there is no obligation for the Claimant to stay the arbitral proceedings. Furthermore, the U.K. recognition order is not different in its result.

38. The two attachments made by the Claimant have taken place in Switzerland and in the Netherlands.

39. Neither the Swiss courts nor the Dutch courts have recognized the restructuring proceedings initiated by the Respondent. For this reason, there is no compulsory stay of Court or arbitral proceedings.

## VI.  Conclusion

39. The arbitral proceedings and the restructuring plan are still distinct. No binding agreement forces the Claimant to suspend or drop its arbitral request. The tribunal is respectfully asked to pursue this arbitration which has now been pending for 9 months.

40. For the remaining, the Claimant expressly refers to its Notice of Arbitration and Statement of Claim dated 29th October 2009.

41. The Claimant expressly reserves its rights to supplement, modify and amend its arguments at fact and law and to supply additional documents and evidence in support of its case in subsequent submissions.

## VII.   Relief sought by the Claimant

Claimant respectfully requests the arbitral Tribunal to order:

a.  That the Respondent must pay to the Claimant the full amount of the prejudice suffered due to Respondent's breach of the contract and representing according to the Claimant's current estimate the total amount of USD 20'277'533.33 plus accrued interest (5% since 4th August 2009) thereon.

b.  That the Respondent must pay to the Claimant all its costs incurred in connection with this arbitration proceedings including all costs associated herewith, such as legal and expert costs, and including in house counsel costs and costs of management time as well as the costs for the attachment proceedings in Rotterdam and in Zurich (court and local lawyers' fees) and its leading counsel's fees.

Geneva, 28th June 2010

Respectfully submitted on behalf of
BIC-BRED:

*[signature]*

Sirin Yüce

- 8 -

## sirin.yuce@mentha.ch

| | |
|---|---|
| **De:** | BIC-BRED (Ilario Cirieco) [icirieco@bic-bred.com] |
| **Envoyé:** | jeudi, 24. juin 2010 16:25 |
| **À:** | sirin.yuce@mentha.ch |
| **Objet:** | Fw: Re: your question with regard to InfoMemo |

Mentha & Associés
PIÈCE n° 20

Chère Sirin,

selon notre discussion de toute à l'heure.

Cordialement,

Ilario

Ilario Cirieco
Banque Internationale de Commerce - BRED, Geneva

----- Original Message -----
**From:** vgalyamova@bta.kz
**To:** BIC-BRED (Ilario Cirieco)
**Sent:** Monday, May 17, 2010 2:42 PM
**Subject:** Ha: Re: your question with regard to InfoMemo


Dear Ilario,

I hope you had a good weekend?
In relation to your request, please see our comment below.
I refer to paragraph 3.4 '**Release**' (page 286 (292) of the Information Memorandum):
3.4 (a) Each Claimant and Related Party authorises the Bank from the Restructuring Date to enter into, execute and deliver the Deed of Release on behalf of each Claimant, Related Party and any person to whom a Claimant or Related Party has transferred any Claim, in substantially the form attached hereto as Annex 3, pursuant to which any and all claims of such persons against the parties named therein shall be cancelled and/or discharged and released fully and absolutely from the Restructuring Date.
(b) On the Restructuring Date the Bank shall enter into and deliver the Deed of Release as principal and on behalf of all Claimants and Related Parties pursuant to the authority conferred by Clause 3.4(a).
(c) Each Claimant and Related Party understands that on the Restructuring Date any and all claims of Claimants and Related Parties shall be cancelled and/or discharged and released fully and absolutely from from the Restructuring Date in accordance with the Deed of Release.

In addition, for definition of 'the Restructuring Date' please refer to the page 36 (42) of '**Key Terms and definitions**' of the Information Memorandum: "Restructuring Date" means the time and date upon which the Steering Committee notifies to the Bank that the conditions precedent listed in Schedule 12 (*Conditions Precedent to the Restructuring Plan Becoming Effective*) to this Information Memorandum are satisfied (for which purpose the Steering Committee shall be entitled to rely without further investigation on the officer's certificate and supporting evidence provided pursuant to paragraph 18 of Schedule 12 (*Conditions Precedent to the Restructuring Plan Becoming Effective*) to this Information Memorandum).

With accordance of above mentioned, Deed of Release to be entered into by the BTA Bank following the Restructuring Date (i.e. on the Restructuring Date) on behalf of Creditors

Should you have more questions, please contact me.


Best regards,
**Venera Galyamova**
Financial Institutions
Europe, Americas & Australia
Tel.: (+7727) 312 4514
e-mail: vgalyamova@bta.kz
JSC BTA Bank

1

**"BIC-BRED \(Ilario Cirieco\)"** <icirieco@bic-bred.com>    Кому <vgalyamova@bta.kz>
                                                              Копия
14.05.2010 21:42                                              Тема Re: your question with regard to InfoMemo

Срок ответа для:
"BIC-BRED \(Ilario Cirieco\)" <icirieco@bic-bred.com>

Dear Venera,

the question I was adressing was the following. In the annex 3 (form of Deed of Release), that the Bank will sign on behalf of the Claimants (pursuant to hte authority conferred by sending the Claim Form), we would like to know when will the Waiver come into force.

In fact, on the point 2.1, "the Claimants waive... each and every claim which they have against each and all of : the Bank, the Subsidiaries, etc..

arising out of or in connection with Designated Financial Indebtedness and/or the implementation of the Restructuring.".

So, would you please indicate when will this Deed of Release come actually into force ?


With kind regards,

Ilario


Ilario Cirieco
Banque Internationale de Commerce - BRED, Geneva

----- Original Message -----
**From:** vgalyamova@bta.kz
**To:** BIC-BRED (Ilario Cirieco)
**Sent:** Thursday, May 13, 2010 9:33 AM
**Subject:** Ha: your question with regard to InfoMemo


Dear Ilario,

I refer to our yesterday's telephone conversation.
I talked to our Legal dept. people about your question with regard to paragraph 2.1. of Info Memo.
They are asking you to put your question in writing and email it to me to enable them to answer it most precisely.
Can you do that?

Kind regards,
Venera

**Venera Galyamova**
Financial Institutions
Europe, Americas & Australia
Tel.: (+7727) 312 4514
e-mail: vgalyamova@bta.kz
JSC BTA Bank

**sirin.yuce@mentha.ch**

| | |
|---|---|
| **De:** | BIC-BRED (Ilario Cirieco) [icirieco@bic-bred.com] |
| **Envoyé:** | lundi, 28. juin 2010 10:22 |
| **À:** | sirin.yuce@mentha.ch |
| **Objet:** | Fw: Re: Banque Internationale de Commerce - BRED / CLAIM FORM FOR THE RESTRUCTURING PLAN |

Mentha & Associés
PIÈCE n° 21

Chère Sirin,

selon notre conversation.

Salutations,

Ilario

Ilario Cirieco
Banque Internationale de Commerce - BRED, Geneva

----- Original Message -----
**From:** vgalyamova@bta.kz
**To:** BIC-BRED (Ilario Cirieco)
**Cc:** desmeules@bic-bred.com ; d_adil@bta.kz ; zhaisanov@bta.kz
**Sent:** Friday, May 21, 2010 3:04 PM
**Subject:** Ha: Re: Banque Internationale de Commerce - BRED / CLAIM FORM FOR THE RESTRUCTURING PLAN

Dear Ilario,

On behalf of my relevant colleagues I hereby confirm that your claim form is duly registered.
Thank you for your co-operation.

Best regards,
**Venera Galyamova**
Financial Institutions
Europe, Americas & Australia
Tel.: (+7727) 312 4514
e-mail: vgalyamova@bta.kz
JSC BTA Bank


"BIC-BRED \(Ilario Cirieco\)" <icirieco@bic-bred.com>

19.05.2010 20:45

Кому <vgalyamova@bta.kz>
Копия <desmeules@bic-bred.com>, <atchabarov@bta.kz>
Тема Re: FORM OF PROXY FOR CLAIMANTS OF JSC BTA BANK and CLAIM FORM FOR THE RESTRUCTURING PLAN

Срок ответа для:
"BIC-BRED \(Ilario Cirieco\)" <icirieco@bic-bred.com>


Dear Venera,

following your comments, please find enclosed the revised documents which supersede the ones that were previously sent.

With best regards,

Ilario

1

Ilario Cirieco
Banque Internationale de Commerce - BRED, Geneva

----- Original Message -----
**From:** vgalyamova@bta.kz
**To:** BIC-BRED (Ilario Cirieco)
**Cc:** desmeules@bic-bred.com ; atchabarov@bta.kz
**Sent:** Wednesday, May 19, 2010 12:43 PM
**Subject:** Fw: FORM OF PROXY FOR CLAIMANTS OF JSC BTA BANK and CLAIM FORM FOR THE RESTRUCTURING PLAN


Dear Ilario,

Please see below for our comments with regard to your claim form.

1) Box 2, Claim registration number - please insert OT 905 instead of CALI 043/08
2) Box 3, Item B, First Choice Election - since your debt is Non-OGSC eligible TF debt, it has to be indicated in SP3 instead of SP1.
Then please fill the Total amount.
3) Box 3, Item E - please mark "I am a creditor who is not resident of Kazakhstan..." and then please choose "GDRs" or "Shares"

Please amend the Proxy accordingly (claim registration number and etc.)

Thank you.


Best regards,
**Venera Galyamova**
Financial Institutions
Europe, Americas & Australia
Tel.: (+7727) 312 4514
e-mail: vgalyamova@bta.kz
JSC BTA Bank


----- Переслано: Динара Адил/Almaty/ТуранАлем дата: 19.05.2010 15:33 -----

"BIC-BRED \(Ilario Cirieco\)" <icirieco@bic-bred.com>

19.05.2010 16:32
Срок ответа для: "BIC-BRED \(Ilario Cirieco\)"

Кому:   <zhaisanov@bta.kz>, <d_adil@bta.kz>
Копия:  <desmeules@bic-bred.com>
Тема:   FORM OF PROXY FOR CLAIMANTS OF JSC BTA BANK and CLAIM FORM FOR THE RESTRUCTURING PLAN


Dear Sirs,

please find enclosed the Form of Proxy and the Claim Form duly completed by our Bank. The originals of these documents will follow by courier.

With best regards,

Ilario Cirieco
Banque Internationale de Commerce - BRED, Geneva

```
*** This message is checked for malicious content.***
*** ATTENTION! Do not open attachments from unknown senders .***
[вложение "FORM OF PROXY FOR CLAIMANTS OF JSC BTA BANK.pdf" удалено Венера
Галямова/Almaty/ТуранАлем] [вложение "CLAIM FORM FOR THE RESTRUCTURING PLAN.pdf"
удалено Венера Галямова/Almaty/ТуранАлем]

*** This message is checked for malicious content.***
```

2